**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| George Reiss,<br><br>Plaintiff,<br><br>v.<br><br>Arizona Department of Child Safety, *et al.*,<br><br>Defendants. | No. CV-18-00029-PHX-JJT<br><br>**ORDER** |

At issue is the Motion to Dismiss (Doc. 12, Mot.), which Defendants Arizona Department of Child Safety ("DCS"), DCS Director Greg McKay ("McKay"), David Graham ("Graham"), Amanda Santiago ("Santiago"), and Marylou Kash ("Kash") filed on April 30, 2018, and to which Plaintiff Dr. George Reiss filed a Response (Doc. 18, Resp.) and Defendants filed a Reply (Doc. 25, Reply). The Court elects to resolve the Motion without oral argument. *See* LRCiv 7.2(f). For the reasons that follow, the Court grants Defendants' Motion.

**I.  BACKGROUND**

In the Complaint, Plaintiff alleges the following relevant facts, which the Court takes as true for the purpose of resolving the Motion to Dismiss. *See Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996). Plaintiff married his now former wife ("Mother") in 2009 and together they had two children—a son born in 2010 and a daughter born in 2011. (Doc. 10, First Amended Complaint ("FAC") ¶ 35.) Plaintiff and Mother separated in April 2015. (FAC ¶ 36.) On April 14, 2015, in the midst of negotiations for child

custody, Mother brought the two children to Phoenix Children's Hospital to be evaluated for sexual abuse that she claimed Plaintiff had committed. (FAC ¶¶ 41–42.) After conducting a physical examination of the children, a physician found no signs of abuse. (FAC ¶ 44.) Nevertheless, DCS initiated an investigation based on Mother's allegations of sexual abuse. (FAC ¶ 42.) Defendants Santiago and Kash, who were employed as caseworkers and investigators for DCS at the time, were assigned to the case. (FAC ¶ 42.) DCS contacted the Paradise Valley Police who assigned Detective Steven Schrimpf to the matter. (FAC ¶ 43.)

After the medical evaluation at the Phoenix Children's Hospital, Kash and Detective Schrimpf interviewed the children. (FAC ¶ 45.) The son stated that Plaintiff had "touched his privates" on one occasion in the bathroom while the family was on vacation. (FAC ¶¶ 45–47.) The daughter stated that Plaintiff had touched her "privates," but she was then too tired to complete the interview because at that point it was late at night. (FAC ¶ 47.) After the interviews, DCS decided to prohibit Plaintiff from having contact with his children and created a "safety plan," which was an agreement of no-contact to be signed by Plaintiff. (FAC ¶ 48.) Defendant Kash then travelled to Plaintiff's home and presented the safety plan, to which Plaintiff reluctantly agreed after being told that the only alternative was for his children to be placed in state custody. (FAC ¶¶ 51–52.)

A couple days later, on April 16, 2015, Plaintiff filed for divorce in Arizona family court. (FAC ¶ 56.) On April 21, 2015, "in line with, if not wholly based on, DCS's safety plan, the family court found that DCS had determined that [Plaintiff] . . . should have no contact with his children and ordered the same." (FAC ¶ 57.)

On June 18, 2015, Santiago sent Plaintiff a letter indicating that she was going to recommend substantiating—meaning she had found reason to believe—Mother's April 14, 2015 report and allegations of child abuse. (FAC ¶ 62.) On September 1, 2015, Plaintiff received a letter stating that DCS had completed the investigation and had reason to believe that Plaintiff had abused his children. (FAC ¶ 64.) On September 9,

2015, Plaintiff requested an appeal of DCS's proposed substantiation of the sexual abuse report and submitted information to support his position that DCS should not substantiate the allegation. (FAC ¶¶ 66–67.)

Plaintiff alleges that, under Arizona law, if an accused party appeals a proposed substantiation by DCS, the Protective Services Review Team ("PSRT") reviews the information and determines if there is enough evidence to support the decision made by DCS. (FAC ¶ 31.) Defendant Graham was program manager of PSRT at the time. (FAC ¶ 9.) On September 28, 2015, Plaintiff submitted to PSRT a summary of exonerating information. (FAC ¶ 69.) On March 21, 2016, PSRT sent Plaintiff a letter informing him that Mother's April 14, 2014 report and allegations of child abuse had been substantiated. (FAC ¶ 76.) On April 4, 2016, Plaintiff sent a letter to DCS, PSRT, and McKay, again summarizing exonerating information and requesting that DCS review the case pursuant to its duty under Arizona law to determine whether there was probable cause for substantiation. (FAC ¶ 78.)

On July 21, 2016, Plaintiff filed a complaint for Special Action (mandamus) relief in Arizona Superior Court alleging "that, despite being required by A.R.S. § 8-811(E) to review the allegations that DCS intended to substantiate, DCS had failed to fulfill that obligation, repeatedly refused to initiate a review of the abuse allegations, and continued to refuse to engage in its mandatory internal review process." (FAC ¶ 79.) Soon after Plaintiff filed the Special Action, DCS agreed to review the documents Plaintiff submitted in exchange for Plaintiff dismissing his complaint. (FAC ¶ 80.) On September 6, 2016, after its review of Plaintiff's materials, DCS issued a letter unsubstantiating Mother's accusations and closing the DCS case against him. (FAC ¶ 81.)

In February 2017, the family court held a multi-day hearing where Defendant Kash testified that she largely substantiated a finding of sexual abuse against Plaintiff based on the children's reporting, while conceding that there were several indications that the allegations were untrue. (FAC ¶¶ 88–89.) On March 2, 2017, the family court issued a

decree finding that there was never any credible evidence that Plaintiff sexually abused his children and no basis for a substantiation of DCS's April 14, 2015 report. (FAC ¶¶ 94–95.)

On January 23, 2017, Mother contacted DCS and the police to report Plaintiff for a second incident, alleging that Plaintiff showed their daughter a pornographic cartoon video on Mother's iPad. (FAC ¶ 84.) The family court expressly addressed the accusations and decided they were untrue. (FAC ¶ 97.) In late February to mid-March 2017, Mother re-raised the iPad allegations with DCS, after which DCS caseworkers interviewed Plaintiff's daughter and informed Plaintiff that they were investigating the allegations. (FAC ¶¶ 97, 99.) Plaintiff alleges that DCS has not yet issued any finding unsubstantiating the iPad video allegation. (FAC ¶ 101.) In March 2017, Mother also alleged that the daughter had been kicked in the mouth by Plaintiff, but DCS investigated and found that unsubstantiated on May 27, 2017. (FAC ¶¶ 103, 107.)

Plaintiff originally filed a Complaint in Maricopa County Superior Court in this action on July 31, 2017. (Doc. 1, Notice of Removal.) Defendants removed to federal district court. (Doc. 1-1 at 9-21.) Plaintiff amended his Complaint on March 30, 2018. The FAC includes three counts alleging violations of 42 U.S.C. § 1983, two counts alleging violations of Plaintiff's rights under the Arizona Constitution, and one count alleging violation of Arizona law. Defendants now move to dismiss the FAC under Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiff has failed to state a claim upon which relief may be granted for the following reasons: DCS and Defendants McKay and Graham are not subject to § 1983, the individually named Defendants are entitled to immunity, and Plaintiff's claims are time-barred. (Mot. at 4–12.)

## II. LEGAL STANDARDS

A complaint must include "only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see also* Fed. R.

Civ. P. 8(a). A dismissal under Rule 12(b)(6) for failure to state a claim can be based on either (1) the lack of a cognizable legal theory or (2) insufficient facts to support a cognizable legal claim. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). "While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint must thus contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that 'recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

"To sustain an action under § 1983, a plaintiff must show (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a constitutional right." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 700 (9th Cir. 1988) (citing *Rinker v. Napa County*, 831 F.2d 829, 831 (9th Cir. 1987)). If a plaintiff does not allege sufficient facts to state a plausible claim under this standard, a § 1983 claim must be dismissed. When a dismissed complaint cannot be cured by amendment, the Court dismisses the claim with prejudice. *See Lopez v. Smith*, 203 F.3d 1122, 1127–30 (9th Cir. 2000).

**III. ANALYSIS**

    **A. Section 1983 Claims against Defendants in their Official Capacity**

In their Motion, Defendants argue that all official-capacity claims seeking money damages must be dismissed because a state entity or officer named in an official capacity is not a "person" within the meaning of § 1983. (Mot. at 5.) The Court agrees.

According to § 1983, "Every *person* who, under color of [law] . . . , subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any

rights, privileges, or immunities secured by the Constitution and the laws, shall be liable to the party injured." 42 U.S.C. § 1983 (emphasis added). The Supreme Court has ruled, however, that a lawsuit against a state official acting in his or her official capacity is actually "a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). The Supreme Court has also held that a state or state agency is not a "person" within the meaning of § 1983 and therefore is not subject to money damages in lawsuits alleging § 1983 violations. *Id.* at 58. Defendants McKay, Graham, Santiago, and Kash are all state officers named in an official capacity, and DCS is a state agency. Moreover, Plaintiff is seeking only money damages. Therefore, all official-capacity claims and claims against DCS constitute "a suit against the State itself" and, because a state is not a § 1983 "person," all such claims are dismissed. *Id.* at 59. Because the defects in these claims cannot be cured by amendment, the Court dismisses the claims with prejudice. *See Lopez*, 203 F.3d at 1127–30.

Plaintiff argues that Defendants are liable in an official capacity under § 1983 because they acted according to a policy, practice, or custom that caused the deprivation of Plaintiff's constitutional rights. (Resp. at 6.) The policy, practice, or custom inquiry, however, is relevant only where the plaintiff in a § 1983 lawsuit attempts to hold a municipality liable for the actions of one of its officials. *Compare Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978) (holding that a municipality cannot be held liable for the actions of its employees under § 1983 unless the municipality's policy or custom was the moving force behind the alleged constitutional harm), *with Will*, 491 U.S. at 71 (holding that a state official acting in an official capacity is not a "person" under § 1983). Plaintiff does not contend that any of the Defendants are municipal, rather than state, officials. Therefore, *Monell* is inapposite.

Plaintiff also argues that McKay and Graham are liable in their supervisory capacities. (Resp. at 7.) However, a state official named in an official capacity is not made a "person" pursuant to § 1983 because he/she is also named in a supervisory

capacity. *See Will*, 491 U.S. at 71. Thus, it remains that all § 1983 claims against McKay and Graham are properly dismissed with prejudice.

### B. Section 1983 First Amendment Retaliation Claims

While Defendants are not subject to a § 1983 lawsuit in an official capacity, the FAC names Santiago and Kash in a personal capacity (FAC ¶¶ 10, 11), which makes them suable persons subject to money damages under § 1983. *Hafer v. Melo*, 502 U.S. 21, 31 (1991). Plaintiff alleges under § 1983 that Defendants withheld the decision to unsubstantiate allegations of sexual abuse against him in retaliation for a lawsuit he filed for mandamus relief on July 21, 2016. (FAC ¶ 79.) Plaintiff's FAC, however, does not allege any facts showing that Santiago or Kash were involved in a decision to substantiate allegations against Plaintiff after July 21, 2016, when he filed the lawsuit. As such, Plaintiff fails to allege facts to state a claim of First Amendment retaliation by Santiago or Kash. Because it is possible that Plaintiff could allege such facts, his First Amendment retaliation claim may be cured by amendment. *See Lopez*, 203 F.3d at 1127–30.

### C. Section 1983 Due Process Claims against Santiago and Kash

#### 1. Absolute and Qualified Immunity

Defendants argue that while Santiago and Kash may be individually liable in their personal capacities, they assert both absolute and qualified immunity as a defense. (Mot. at 11–12.) Santiago and Kash are not entitled to absolute and qualified immunity. A case worker such as Santiago or Kash may enjoy absolute immunity when performing either quasi-judicial functions, such as executing a court order in a child welfare proceeding, or "quasi-prosecutorial functions connected with the initiation and pursuit of child dependency proceedings." *Caldwell v. LeFavor*, 928 F.2d 331, 333 (9th Cir. 1991); *Meyers v. Contra Costa Cty. Dep't. of Soc. Servs.*, 812 F.2d 1154, 1157 (9th Cir. 1987). Here, there are no factual allegations indicating that Santiago or Kash's actions could be characterized as quasi-judicial or quasi-prosecutorial.

The closer call is whether qualified immunity applies. Qualified immunity applies either when (1) the law governing the official's conduct is not clearly established, or (2)

if the law is clearly established, a reasonable official could have believed that the conduct was lawful. *Rogers v. County of San Joaquin*, 487 F.3d 1288, 1297 (9th Cir. 2007). At the time that the conduct occurred, it was clearly established that Plaintiff had a constitutionally protected liberty interest in the custody and care of his children. *Santosky v. Kramer*, 455 U.S. 745, 753 (1982). However, it was also clearly established that a social worker may remove a child from a parent without a pre-deprivation hearing if he/she has "information at the time of the seizure that establishes 'reasonable cause to believe that the child is in imminent danger of serious bodily injury and that the scope of the intrusion is reasonably necessary to avert that specific injury.'" *Mabe v. San Bernardino Cty. Dep't of Soc. Servs.*, 237 F.3d 1101, 1106 (9th Cir. 2001) (quoting *Wallis v. Spencer*, 202 F.3d 1126, 1136 (9th Cir. 2000)). Courts have defined imminent danger of harm to be danger that harm may occur in the time required to obtain a warrant for removal of the child or children. *Mabe*, 237 F.3d at 1108. Thus, the question is whether Santiago or Kash could have reasonably believed that removal of the children, given the circumstances, did not violate Plaintiff's constitutionally protected liberty interest in the care of his children.

The Court first clarifies that while Defendants did not remove Plaintiff's children outright, they still could have violated his constitutional rights by implementing a safety plan that allowed no contact between Plaintiff and his children. On the night of April 14, 2015, Kash travelled to Plaintiff's home and presented the safety plan to which Plaintiff reluctantly agreed after being told that the alternative was state custody of his children. (FAC ¶¶ 51–52.) While Defendants did not physically remove Plaintiff's children from his care or take legal custody of the children, the constitutionally protected liberty interest in the care and custody of a parent's children is not so limited. Where, as here, without a court hearing, a social worker gives a parent a choice between two options both resulting in loss of contact with his/her children, the social worker may have interfered with the parent's constitutionally protected liberty interest in the care and custody of their children without due process of law. *See Woodrum v. Woodward Cty., Okl.*, 866 F.2d 1121, 1124–

25 (stating that "a parent has a constitutionally protected liberty interest in the companionship and society of his or her child").

Given this intrusion, the next question is whether it was justified by "information at the time of the seizure that establishes 'reasonable cause to believe that the child is in imminent danger of serious bodily injury.'" *Mabe*, 237 F.3d at 1106. Here, the information available to Kash and Santiago suggesting that the children may have been in imminent danger of serious bodily injury consisted of accusations of sexual abuse by Mother and statements by the children that Plaintiff had touched their "privates." (FAC ¶¶ 45–47.) While in many instances this may justify immediately severing contact between a parent and child, Plaintiff's allegations of the surrounding circumstances here show that there may not have been "reasonable cause to believe" that the children were in imminent danger of serious bodily injury. *Id.*

To begin with, Plaintiff's allegations indicate that the children were with Mother, not Plaintiff, at the time that the safety plan was executed. (FAC ¶ 45.) Thus, it is at least plausible that Plaintiff would not have had access to the children within the relatively short amount of time required to obtain a warrant. Furthermore, the son indicated that his "privates" had been touched "on one occasion . . . while the family was on vacation." (FAC ¶ 46.) Plaintiff alleges that the son's statement was consistent with Plaintiff helping him use the bathroom. (FAC ¶ 46.) Even if that was not apparent, however, the son's statement that his "privates" had been touched by his father on one occasion separated by a significant amount of time, does not reasonably suggest imminent danger of serious bodily injury that would prevent Santiago or Kash from taking the time required to obtain a warrant. *See Wallis v. Spencer*, 202 F.3d 1126, 1140 (9th Cir. 2000) (stating that information suggesting that abuse occurs only on certain dates militates against concluding that a child is in imminent danger).

Finally, Plaintiff alleges that physical examinations of the children before the safety plan was executed did not suggest any abuse had occurred. (FAC ¶ 44.) This should have indicated that the children were not in danger of serious bodily injury. *See*

*Rogers v. Cty. of San Joaquin*, 487 F.3d 1288, 1295 (9th Cir. 2007) (holding no reasonable cause to believe children are in imminent danger when physical state of children suggests neglect rather than abuse). While allegations of sexual abuse must be taken seriously, the law requires that decisions to deprive parents of contact with their children only be made when necessary to prevent danger of immediate harm. *Mabe*, 237 F.3d at 1106. The Court finds that in the situation alleged by the Plaintiff, based on the information available at the time, it is at least plausible that a reasonable person would not have believed that prohibiting contact between Plaintiff and his children was necessary to prevent danger of imminent serious bodily injury. It is therefore at least plausible that Santiago and Kash would not be entitled to qualified immunity for the initial deprivation of Plaintiff's contact with his children. Thus, the Court would decline to dismiss Plaintiff's claims against Santiago and Kash on this basis.

### 2. Statute of Limitations

Given that Plaintiff's only remaining § 1983 claims are those against Defendants Santiago and Kash in their individual capacities, the Court turns to Defendant's argument that those claims are barred by the applicable statute of limitations. (Mot. at 5–6.) Because § 1983 does not include a statute of limitations, courts apply the most appropriate state statute of limitations in construing the timeliness of a § 1983 claim. *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 974 (9th Cir. 2004) (citation omitted). For § 1983 claims in Arizona, courts use the statute of limitations period established for personal injury claims, which is two years from when the claim accrues. *Id.*; A.R.S. § 12-542. Federal law determines when a federal civil rights claim accrues. *Morales v. City of Los Angeles*, 214 F.3d 1151, 1154 (9th Cir. 2000). Under federal law, a claim accrues "when the plaintiff knows or has reason to know of the actual injury" that is the basis of the cause of action. *Lukovsky v. City & County of San Francisco*, 535 F.3d 1044, 1051 (9th Cir. 2008).

In a § 1983 action for a procedural due process violation, the injury giving rise to the claim is complete when (1) "a liberty or property interest . . . has been interfered with

by the State;" and (2) "the procedures attendant upon that deprivation were constitutionally" insufficient. *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 460 (1989).

Here, Defendants contend that Plaintiff's injury occurred—and thus his claim accrued—on April 14, 2015, when the safety plan was executed, depriving him from contact with his children. Defendants argue in the alternative that, at the latest, Plaintiff's claims accrued on June 18, 2015, when he received notification from Santiago stating that she planned to propose substantiating DCS's report of sexual abuse. (Mot. at 6.) If Plaintiff's claims accrued on either date, the two-year statute of limitations would have run by the time the Complaint was filed on July 31, 2017.

Because Plaintiff's § 1983 claim is one of procedural due process, Defendants are correct that his constitutional interest in the care and custody of his children was first interfered with on April 14, 2015, when Plaintiff was initially deprived of contact with his children. This injury forms the basis for the first part of Plaintiff's § 1983 procedural due process claim. But the second part—that the procedures attendant upon that deprivation were constitutionally deficient—must also have occurred in order for Plaintiff's claim to have accrued. *See Zinermon v. Burch*, 494 U.S. 113, 126 (1990) (stating that "[t]he constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process").

At the outset, the Court notes that Plaintiff does not contend that the procedures required before a parent is deprived of custody under Arizona law or DCS policy are constitutionally deficient on their face. Plaintiff alleges that Santiago and Kash acted contrary to the procedural safeguards in place by initially denying him contact with his children without sufficient evidence and, among other things, failing to unsubstantiate the claims of sexual abuse despite the availability of exonerating evidence.[1] (FAC ¶¶ 112–133.)

---

[1] Because Plaintiff does not allege that Santiago or Kash acted according to a DCS or Arizona policy or custom, the claims against them in their official capacity must be dismissed, as already stated. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) (holding that a § 1983 official-capacity suit requires that "the entity's policy or custom must have played

The Court now turns to whether and at what point these procedures were constitutionally deficient such that Plaintiff knew or should have known of the injury giving rise to his § 1983 claim. The procedural safeguards that must accompany a deprivation of a constitutionally protected interest are a matter of federal law. *Vitek v. Jones*, 445 U.S. 480, 491 (1980). The Ninth Circuit has held that due process requires that parents receive notice and a hearing before they are deprived of contact with their children unless the depriving party has "information at the time of the seizure that establishes reasonable cause to believe that the child is in imminent danger of serious bodily injury and that the scope of the intrusion is reasonably necessary to avert that specific injury." *Mabe*, 237 F.3d at 1106 (internal quotations omitted). As noted above, the Court finds that Plaintiff's allegations are sufficient to plausibly demonstrate that he did not receive due process of law before being deprived of contact with his children in the absence of reasonable cause to believe that the children were in imminent danger of serious bodily injury, considering Plaintiff's allegations that he did not receive notice or a hearing prior to deprivation.

Therefore, Plaintiff knew or should have known of the injury giving rise to his claims on the night of April 14, 2015, when the safety plan went into effect denying him contact with his children, because it was then that the procedures depriving him of his rights were constitutionally deficient. Kash presented the safety plan to Plaintiff on the night of April 14, 2015. He knew that he was being prohibited from having contact with his children based on accusations of sexual abuse by Mother and statements made by the children. (FAC ¶¶ 112–133.) He therefore had all the information necessary to realize that there was no reasonable cause to believe that he posed imminent danger of serious bodily harm to his children. Plaintiff also knew that he had not received a hearing prior to

---

a part in the violation of federal law"). However, Santiago and Kash are still subject to a § 1983 lawsuit in a personal capacity for allegedly depriving Plaintiff of his constitutionally protected rights. *Id.*

- 12 -

being deprived of contact with his children. In sum, Plaintiff knew or had reason to know of the injury giving rise to his claim, on April 14, 2015.[2]

Plaintiff argues that his § 1983 due process claim did not accrue until the DCS/PSRT proceedings reached a final conclusion on September 6, 2016. (Resp. at 7–8.) Plaintiff relies on *Hoesterey v. City of Cathedral City*, where the Ninth Circuit held that § 1983 due process claims brought by a plaintiff whose employment was terminated did not accrue until the termination was "unequivocal, and communicated in such a manner that no reasonable person could think there might be a retreat or a change in position." 945 F.2d 317, 320 (9th Cir. 1991). However, unlike *Hoesterey*, the date of accrual in this instance does not depend on the conclusion of a post-deprivation proceeding. Plaintiff's injury—the deprivation of his liberty interest to the care and custody of his children without due process—was complete when he was deprived of contact with his children without a hearing and without exigent circumstances.

Plaintiff also argues that even if his claims did accrue on April 14 or June 18, 2015, ongoing interference with his constitutional rights prevents a statute of limitations bar on his claims based on the continuing violation theory. (Resp. at 9.) "The continuing violation theory, which applies to § 1983 claims, allows a plaintiff to seek relief for events outside the limitations period." *Dowling v. Arpaio*, No. CV-09-1401-PHX-JAT, 2011 WL 843942, at *6 (D. Ariz. Mar. 8, 2011) (citing *Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001)). "In order to show a continuing violation, a plaintiff must state facts sufficient to support a determination that the alleged . . . acts are related closely enough to constitute a continuing violation." *Id.* But the continuing violation theory does not extend

---

[2] Although not raised by Defendants, Plaintiff may also be precluded from raising his claims before this Court when he may have been able to bring them in the state administrative or judicial proceedings. Under Arizona law, "[w]hen a state agency acts in a judicial capacity to resolve disputed issues of fact and law properly before it, and when the parties have an adequate opportunity to litigate those issues, federal courts must give the state agency's fact-finding and legal determinations the same preclusive effect to which it would be entitled in that state's courts." *Olson v. Morris*, 188 F.3d 1083, 1086 (9th Cir. 1999). The preclusive effect extends "to alleged constitutional errors that might have been corrected on proper application to the court which has jurisdiction of the appeal" of an administrative decision. *Id.*

the statute of limitations for a continuing *impact* where there are no continuing acts. *Knox*, 160 F.3d at 1013; *see also Flowers v. Carville*, 310 F.3d 1118, 1126 (9th Cir. 2002) (stating that the continuing violation theory generally applies when there is "'no single incident' that can fairly or realistically be identified as the cause of significant harm").

Here, Plaintiff's § 1983 claims are based on the initial deprivation of contact with his children stemming from the April 14, 2015 safety plan. Plaintiff's continuing loss of contact with his children beyond April 21, 2015 was the result of an order by the family court overseeing his divorce, which Plaintiff alleges was "in line with, if not wholly based on, DCS's safety plan." (FAC ¶ 57.) Accepting Plaintiff's allegation that the family court based its order on DCS's safety plan, the continuing loss of his constitutional right to the care and custody of his children was at most a continuing *impact* resulting from the initial deprivation of his children. Since a continuing impact does not toll the statute of limitations, it remains that Plaintiff's § 1983 procedural due process claim against Santiago and Kash accrued on April 14, 2015, or at the latest, June 18, 2015, and is therefore time-barred.[3] Because they cannot be cured by amendment, the Court dismisses the claims with prejudice. *See Lopez*, 203 F.3d at 1127–30.

The Court also finds that Count Four—Plaintiff's § 1983 substantive due process claim—to the extent it is otherwise valid, is time-barred. In a § 1983 action for a substantive due process violation, the injury giving rise to the claim is complete when there is an abuse of power by an official acting under color of law that shocks the conscience. *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 834 (1998). Any plausible § 1983 substantive due process claim would have accrued upon deprivation of Plaintiff's constitutional interest on April 14, 2015 when DCS first informed him that he could no longer see his children. This claim is more than two years old and is thus time-barred.

---

[3] There appears to be a question as to whether Santiago was involved in the initial deprivation on April 16, 2015. However, the Court finds that Santiago's alleged later actions, especially after June 18, 2015, do not give rise to a claim under § 1983. Therefore Santiago's level of involvement in the initial deprivation need not be decided.

## IV. CONCLUSION

The Court finds that all official-capacity claims and claims against DCS must be dismissed because the State is not a person subject to § 1983; that Plaintiff fails to state a plausible § 1983 First Amendment Retaliation claim against any remaining Defendant; and that while Santiago and Kash are not entitled to immunity, Plaintiff's remaining § 1983 claims against them are time-barred. Because the Court finds for the reasons given above that all federal law claims will be dismissed against all Defendants, the Court does not address any further issues raised in Defendants' Rule 12(b)(6) motion.

**IT IS THEREFORE ORDERED** granting Defendants' Motion to Dismiss (Doc. 12).

**IT IS FURTHER ORDERED** granting Plaintiff leave to amend Count 5 against Defendants Kash and Santiago, if the defects in this claim can be cured by amendment. Plaintiff shall file any amended Complaint by December 14, 2018.

Dated this 20th day of November, 2018.

Honorable John J. Tuchi
United States District Judge